**Ernest J. FLOOD, Libelant,**

**v.**

**The AMERICAN OIL SCREW TRAWLER FRANCIS L. MacPHERSON, her engines, boilers, tackle, apparel and furniture, Respondent.**

**No. 64–36.**

United States District Court
D. Massachusetts.

Sept. 28, 1966.

Solomon Sandler, Gloucester, Mass., for plaintiff.

Merrill B. Nearis, C. Richard Clark, Gloucester, Mass., for defendant.

## OPINION

CAFFREY, District Judge.

This case came on for trial upon the libel of Ernest J. Flood as holder of a first preferred mortgage on the vessel FRANCIS L. MacPHERSON; the intervening petition of Ernest J. Flood as assignee of various maritime lien creditors; the intervening petition of Carl Friberg, a maritime lienor; and the intervening petition of Rose Filetto as assignee of the Gloucester Marine Railway. The libel was taken as established against Francis L. MacPherson, Inc., owner of the vessel, which failed to answer the libel.

On August 7, 1964, while this libel was pending, the vessel FRANCIS L. MacPHERSON was sold to the libelant for her appraised value of $47,700 at a Marshal's sale, and another judge of this court confirmed the sale. It was stipulated by counsel for Flood and counsel for Friberg that the fair value of the goods and services furnished by Friberg was $684.20, the amount claimed by him in his intervening petition. I rule that Friberg has a valid maritime lien on the FRANCIS L. MacPHERSON for $684.-20.

Flood claims to hold a mortgage and liens totaling more than $47,700. Thus the issues at the trial were the validity and priority of the mortgage and the various liens assigned to Flood. Flood, a resident of Massachusetts, is in the business of lending money secured by collateral, and also conducts an insurance business. At the trial, testimony was elicited as to the scope of his business operations in writing insurance policies on a variety of fishing vessels, both in the New Bedford and Gloucester fishing fleets, and as to his financial dealings in first and second mortgages with a number of individuals and corporations. Flood had earlier bought the vessel FRANCIS L. MacPHERSON at a Marshal's sale in 1955, and about that time he caused the creation of a corporation called Carjo, Inc., which was thinly capitalized, with a total capital of $1,000, provided by Flood. He caused his two sons to be made the officers of this corporation and he conceded at the trial that he controlled it. In July of 1955, he "sold" the FRANCIS L. MacPHERSON to Carjo, Inc., taking back a note and a purchase money mortgage from Carjo in the amount of $75,000. The note and mortgage were signed on behalf of Carjo, Inc. by Ernest J. Flood, Jr., President. This "corporate action" by Carjo was the result of a joint meeting of stockholders and directors of the corporation held on July 13, 1955, at which were present Ernest J. Flood, Sr. (libelant), Ernest J. Flood, Jr., and Ernest J. Flood, Sr. acting as trustee for his son, Richard F. Flood. On July 30, 1956, Ernest J. Flood filed a satisfaction of mortgage, stating that the above-described note and mortgage had been paid.

Subsequently Carjo, Inc. sold the vessel to a corporation named Francis L. MacPherson, Inc. in a manner not entirely clear on the record. Francis L. MacPherson, Inc. executed a promissory note and a first preferred mortgage to Ernest J. Flood, Sr. on July 30, 1956. The validity of this mortgage is the crucial issue in this case.

Libelant put in evidence (Libelant's Exh. 5) a check which he said supplied the consideration for this mortgage. The check, dated July 30, 1956, is drawn by Ernest J. Flood on the First Safe Deposit National Bank of New Bedford. It is payable to Francis L. MacPherson, Inc. in the amount of $79,000. The endorsements on the back reveal, however, that Francis L. MacPherson, Inc. en-

dorsed it to the order of Carjo, Inc. and that Carjo, Inc., acting by Richard F. Flood, Treasurer, endorsed the check to the order of Ernest J. Flood, Sr., who then endorsed it for deposit only to the account of Ernest J. Flood, with the result that this check in fact had no impact whatsoever on the balance of Flood's checking account, since it caused an offsetting debit and credit in the exact same amount, $79,000, to that account.

I rule that Carjo, Inc. at all times material herein was merely the alter ego of Flood, Sr., that it was a "dummy" corporation completely dominated and controlled by him, and that it was without meaningful legal existence or economic significance; that the endorsement of Flood's check by Francis L. MacPherson, Inc. to Carjo was, in effect, MacPherson's handing back this check directly to Flood. Having in mind both the fact that at the end of this particular transaction Flood wound up as the holder of a $79,000 mortgage on the vessel from MacPherson, Inc. without having parted with ten cents in cash, and the fact that Burke testified that Flood "set Filetto up to be a big man and have him in the boat," and that Filetto "had no conception of what was in the agreement," and that he would say that Filetto in 1956 was not able to read this mortgage, I rule that Francis L. MacPherson, Inc. has not been shown to be anything more than a mere straw for Flood in this complicated deal.

Further light on the true nature of this peculiar transaction was cast by the testimony of Atty. John J. Burke, a disenchanted former business associate of Ernest J. Flood, and a former mayor of Gloucester, who stated that his business dealings with libelant began at a time when some of the vessels in the Gloucester fishing fleet owed money to the libelant on account of insurance premiums. Burke stated that Flood indicated to him that he was aware that these insurance claims did not enjoy the advantage of a maritime lien and that Flood was concerned that either the Government or the creditors were "liable to jump," that

Flood invited Burke to his home in Middleboro and that after a conference they made an agreement that "we would use various corporations that he set up and draw up all the papers. That would completely protect him, give him a preferred position, we would use Filetto (the late Philip Filetto, a fishing boat captain who executed the note and mortgage on behalf of MacPherson, Inc.) and others as stooges and friends—they would sign whatever we told them to. He would make it big enough so he could wipe out the creditors five cents on the dollar, he said, and after it was all cleaned out we would split whatever was left. That was our agreement." When asked why he advised Filetto to sign this $79,000 mortgage to Flood although he believed it to be invalid, Burke testified, "The deal I had with him (Flood) was we had to pay the creditors. They knew the Government was chasing me, he did not want to get involved in it. If we did it legal he is very mute, there is no lawyer in the state can be more mute than he is, and he made everything over."

Burke further testified, "I don't ever remember seeing Ernest Flood put up five cents in cash. I never saw the color of his money." With regard to the execution of the mortgage Burke testified "that was all part of the maneuvers. It was a game of cards. You had to be pretty crass to follow it." His testimony concluded with this question from the court:

Q. You have said in substance that you and Mr. Flood had an agreement by which you set up certain transactions which had the form of a mortgage but not the substance?

A. That's about it.

As libelant, Flood bears the burden of proving the validity of the $79,000 mortgage on which he relies. Having in mind what has been revealed about the sham nature of the consideration allegedly given for this mortgage, through the medium of Exhibit 5, and having in mind the testimony of Burke, which I credit, over the contrary testimony of Flood, which I do not credit, I rule that libelant has

failed to sustain his burden of proving the validity of the mortgage. Since the value of the vessel exceeds $16,000, the total amount of the liens on which Flood relies as intervenor, I do not reach the question of whether or not the assignment of these liens to Flood is void or voidable because of the false representations he made to all of the original creditors as to the validity of his sham $79,000 mortgage in order to induce them to sell out their claims to him at ten cents on the dollar.

I rule that Friberg's lien is prior to Flood's alleged first mortgage, which I rule is invalid. The libel of Rose Filetto is dismissed for failure to prosecute.

Decree accordingly.